IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| CATHERINE JOYCE, AN INDIVIDUAL AND BEAGLE FREEDOM PROJECT, A NON-PROFIT 501(C)(3) <br><br> PLAINTIFFS <br><br> vs. <br><br> TEXAS A&M UNIVERSITY, PETER NGHIEM, CLAY ASHLEY, ROBERT ROSE, JONATHAN BOVA CARLEY CLAUDIO, GABRIELLE KAPP MACIE LEE MACKEY, VICTORIA MCDONALD <br><br> DEFENDANTS. | § § § § § § § § § § § § § § § § § § § | No. _____ |

**PLAINTIFF'S ORIGINAL PETITION AND
APPLICATION FOR TEMPORARY RESTRAINING ORDER**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, CATHERINE JOYCE AND BEAGLE FREEDOM PROJECT, complaining of TEXAS A&M UNIVERSITY, PETER NGHIEM, CLAY ASHLEY, ROBERT ROSE, JONATHAN BOVA, CARLEY CLAUDIO GABRIELLE KAPP AND MACIE LEE MACKEY, and for cause of action would show unto the Judge the following:

**Parties**

1.  Plaintiff CATHERINE JOYCE, (hereafter referred to as "JOYCE") is an individual now residing in Lee County, Texas.

2.  Plaintiff BEAGLE FREEDOM PROJECT (hereinafter "BFP") is a non-profit 501(c)(3) organization dedicated to saving animals and advocating for their welfare. Founded in 2010,

1

Beagle Freedom Project has rescued, rehabilitated and re-homed over 3,500 animals from animal testing laboratories, abusive situations and severe neglect. BFP also focuses on outreach, education and legislation to advocate for a better, safer and kinder world through its BFP Kids in the Classroom programs and legislative initiatives which have passed in 13 states mandating that facilities that use dogs and cats for testing release them after the testing is over so that they might have a second chance at life rather than be killed.

3. Defendant Texas A&M University (hereafter referred to as "TAMU") is a public, land-grant research university. Defendant's main address is 400 Bizzell Street, College Station, Texas, 77840. Defendant's Texas registered agent is Ray Bonilla, Office of General Counsel Moore / Connally Building, 6th Floor 301 Tarrow Street College Station, Texas 77840-7896 (979) 458-6128 fax (979) 458-6150.

4. Defendant Peter Nghiem is an Associate Professor of Veterinary Integrative Biosciences doing Muscular Dystrophy Research at TAMU.

5. Defendant Clay Ashley is the Associate Executive Director of Comparative Medicine at TAMU.

6. Robert Rose is the Executive Director of Comparative Medicine at TAMU.

7. Jonathan Bova is the Clinical Veterinarian of Comparative Medicine at TAMU.

8. Carley Claudio is the Veterinary Medicine Resident at TAMU.

9. Gabrielle Kapp is the Director of Operations in the Comparative Medicine Program at TAMU.

10. Macie Lee Mackey is the senior research associate at TAMU.

11. Victoria McDonald is the large animal division supervisor – comparative medicine program at TAMU.

### Service

12. Irreparable Injury will result if notice is given, as there has been a pattern of retaliation and animal welfare violations. The two dogs at issue may be killed immediately. Therefore, under Tex.R.Civ. Pro. 680, this TRO should be heard without notice. The terminal study by NGHIEM is set to begin in early June and will result in a disruption of the status quo and irreparable harm which will unfairly prejudice Plaintiffs in the ways outline above, and more specifically, result in physical harm to the two dogs by further endangering their health such that they will not be able to be rehabilitated and could eventually be killed.

### Jurisdiction

13. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

### Venue

14. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2). A substantial part of the events giving rise to this claim occurred in this District.

### Factual Background

### SECTION 1

15. JOYCE began employment at TAMU on September 23, 2024, at TAMU's Comparative Medicine Program and Facility as an animal laboratory technician III and immediately noticed dogs in distress, exhibiting physical signs warranting care pursuant to TAMU's internal policies. One dog who particularly stood out, was a dog known by her ear tattoo number: # UFQ-3, who was later named Chami.

16. Chami was extremely fearful and obsessively spinning in circles in her cage, trapped in what veterinary science recognizes as severe stereotypies, a textbook indicator of psychological distress in captive animals.

17.     When people came near Chami, she would become so fearful she would begin to defecate and spray fecal matter all over her kennel.

18.     JOYCE immediately asked about her and what could be done about her behavior to alleviate her distress, but JOYCE was ignored. JOYCE made several suggestions to her supervisor and to the veterinarians, but she was either ignored or was told to wait.

19.     Immediately JOYCE told her supervisor, VICTORIA MCDONALD (hereinafter "MCDONALD") that due to Chami's fearfulness she knew and believed there was a possibility that Chami might "fear bite" - not because she was an aggressive dog, but because Chami was so scared and in an extreme state of distress and extremely fearful. JOYCE wrote this in Chami's behavioral notes. MCDONALD then crossed out this note stating that she did not want these notes on record since animal rights people might FOIA them. (See Exhibit I)

20.     The next day, employee Collette Sprague, without seeing any behavioral notes, entered Chami's kennel and was bitten on her finger. Due to the bite, Chami and her cage mate, Felicity, known by ear tag #PHW-3, were quarantined for two weeks making them ineligible for the pharmacology study they were purchased for. This study was non-terminal, meaning they would not be killed, and they could potentially be adopted out after the study was over, but because of the bite, Chami's fate was unknown, and because Felicity was her cage mate, she was now stuck with her.

21.     Months passed by as Chami's behavior got worse and JOYCE continued to express deep concern for her, lodging complaint after complaint to her supervisors, the veterinarians, superiors and finally to the IACUC. (See Exhibit A)

22.     All the while, nothing was being done to alleviate Chami's stress. JOYCE was the only person trying to work with her and was gaining Chami's trust. (See Exhibit J)

23. JOYCE asked several times to adopt Chami. JOYCE received several assurances from Dr. Nghiem (HEREINAFTER "NGHIEM") and Macie Lee Mackey (Hereinafter "MACIE") that she could adopt Chami. However, later, she was not allowed to adopt Chami. (See Exhibit B)

24. JOYCE sent a video of Chami spinning to NGHIEM to show the severity of her condition which prompted an internal investigation of JOYCE herself, NOT a concern over Chami or investigation into the department, as it should have been. Although NGHIEM told JOYCE he was very upset by what he saw, he instead decided to apply to move Chami and Felicity to his muscular dystrophy study since he needed two terminal dogs, meaning he needed two dogs he could kill. NGHIEM'S study has been criticized for years for not producing results and for the pain and distress it causes dogs, and he has not been allowed to bring in any more dogs, but he saw this as a way to bring in more dogs since Chami and Felicity were sitting ducks essentially. (See Exhibit C).

25. The study is set to begin in the beginning of June (date unknown), and would include painful four-hour infusions for three days, then bloodletting and death. (See Exhibit K).

26. For Chami and Felicity, two dogs who have now been sitting in cages for months on end in distress, to now suffer and be killed, is a fate not deserving. Further, multiple violations of internal animal welfare policy, crafted in accordance with and under the permission of the federal Animal Welfare Act, are at play in the keeping, care and use of both Chami and Felicity, as documented by JOYCE and in additional evidence available to the proceedings.

27. Rather than addressing these violations, correcting them, and working within TAMU policy and authorizing laws on animal research as well as internal policies on employment and state and federal employment law, JOYCE was placed on suspension for showing NGHIEM the video, and then she was terminated by TAMU. This happened five days after JOYCE filed her IACUC complaint.

**SECTION 1A**

28.     JOYCE came to BFP to assist in saving Chami and Felicity. After seeing evidence, BFP became involved in this matter.

29.     BFP, exercising its Freedom of Speech under the First Amendment to the United States Constitution, began a social media campaign to Free Chami from Defendants' facility.

30.     On May 27, 2025, BFP posted on its social media platforms a "Free Chami" post that included a quote attributed to Clay Ashley (Hereinafter "ASHLEY".) (See Exhibit G) On May 28, 2025, the founder and attorney for BFP received an email from ASHLEY demanding a retraction, correction, and posing threats, if many demands were not met within 24 hours. This is a violation of free speech since those things were said by ASHLEY and they are true. (See Exhibit H), and because TAMU is an agency of the state government, and ASHLEY is therefore a state actor, and has no legitimate state interest in limiting the speech of BFP, as BFP's social media posts contain true information and no substantial basis for limiting the speech exists.

31.     Although the post only mentions Chami, this TRO also relates to Chami's cage mate Felicity, but on social media she is kept out to avoid confusion. However, the violations herein described affect BOTH dogs.

## **SECTION 2**

32.     The National Institutes of Health (hereinafter "NIH") is phasing out all animal related studies, in fact a large part of DOGE has been to pull animal testing funding citing it as a waste of taxpayer dollars and unethical.

33.     The NIH just closed the last NIH beagle testing laboratory in the United States.

34.     The testing being done on these beagles is from an NIH grant to TAMU specifically granted to NGHEIM in the amount of $445,162, therefore the protocol that Chami and Felicity are about to begin is in violation of the new United States policies. The existing dogs on the study using this grant must also be released of the protocol and the study must be halted.

35. This specific TAMU study by NGHIEM violates public policy regarding taxpayer funded studies and NIH guidelines.

36. This study by NGHIEM has been conducted for over 40 years with no cure for muscular dystrophy. It is being continued merely for funding for TAMU and the individual defendants due to the NIH providing a grant at the request of defendant NGHIEM.

37. These defendants were sued by PETA and there was an accompanying campaign which legally prevented TAMU from being able to bring in any more animals for this study due to the harmful and fraudulent nature of said study. TAMU is attempting to circumvent this decision in the case of Chami and Felicity.

38. Despite NGHIEM's reaction to Chami's video circling and in distress, he still saw this as a way to bring in two innocent dogs to his study and then to kill.

39. During the campaign where Peta brought NGHIEM's horrendous study to the public's attention, TAMU attempted to silence free speech by removing PETA'S posts and comments. (See Exhibit D)

40. This is a pattern and practice of TAMU.

## FIRST CAUSE OF ACTION
## ANIMAL WELFARE ACT VIOLATIONS

41. On May 30, 2025, Plaintiff JOYCE filed an official Animal Welfare Complaint with the USDA/APHIS. Though the claims at hand involve federal and state law, standing is reached in either or both jurisdictions, as the relevant state and federal laws, as well at TAMU's internal state university policy, are intricately tied together.

42. Plaintiff JOYCE has standing to file violations of animal welfare under 7 U.S.C. 2131, et seq. (The "Animal Welfare Act" hereinafter referred to as the "AWA.") with the USDA/APHIS.

43.     JOYCE was involved in the discovery of the violations and blew the whistle.

44.     Whistleblowers have standing under the False Claims Act (31 U.S. Code § 3730) applicable to situations wherein the whistle is blown in a situation involving "Submitting a claim that falsely certifies that the defendant has complied with a law, contract term, or regulation." TAMU has falsely certified compliance in the documents TAMU staff told Joyce she should cross out or avoid reference to the violations when submitting them to supervisors, veterinarians, and other advisory staff. This is a claim filed under federal and state law, as it also relates to the relevant state law material at hand.

45.     JOYCE has state standing and is protected under The Texas Whistleblower Act, officially titled Chapter 554 of the Texas Government Code.

46.     The Act applies to state and local government entities, including municipalities, counties, and school districts. TAMU falls in this category.

47.     Violations occurred as described throughout this pleading and specifically: when MCDONALD told JOYCE to cross out Chami's behavior on her observation records, when no action was taken towards Chami's suffering (constant spinning in circles for 10-minute intervals all day, every day for the seven months JOYCE worked at TAMU, in violation of the AWA, OLAW and TAMU's own policies), requests to adopt Chami were denied despite previous permissions. Sedative therapy was dismissed without alternatives. Repeated concerns about welfare and requests to improve quality of life or let her leave/be adopted ignored. Violation of AWA (7 U.S.C. § 2143(a)(2)(B)); 9 CFR § 2.131 and 7 U.S.C. § 2143, et seq.). (See Exhibit I).

48.     Suppression of observations subverts institutional integrity and IACUC processes- violates AWA 9 CFR § 2,1, 2.31, 2.35 regulation requires that every research facility must make, keep, and maintain records or forms which fully and correctly disclose information concerning each live dog or cat acquired, owned, held, transported, euthanized, sold, or otherwise disposed

of by the facility. These records must be maintained and made available for inspection by APHIS officials and PHS Policy.

49. Before plaintiff, JOYCE, who implemented outdoor time for the animals in which she interacted during her time of employment, there had been NO access to outdoors. Despite repeated requests for enrichment tools, leadership refused them, in violation of the AWA. AWA Violations 7 U.S.C. §3.8.

50. Chami and Felicity, as well as the other dogs there have no enrichment and did not have any exercise or outdoor access until plaintiff JOYCE began working there. It is mandated in the Animal Welfare Act (AWA), which TAMU is guided by that dogs receive enrichment and exercise: AWA §3.8, et. Seq. (See Exhibit E)

51. Continuing NHGIEM's muscular dystrophy study and using Chami and Felicity is a public policy violation and intentional usurpation of TAMU's policies, state and Federal Law. Not only has the NIH begun replacing animal testing with reliable models, but it has immediately ended funding all beagle testing in pain categories D & E. The latest annual public report from defendant TAMU College Station is from 2023, which shows that it had 180 dogs, 140 of them are in pain categories D. To give this perspective, there are 4 categories. B, C, D, and E. Rather than spelling them all out, the report is attached, but D is the second to most painful. *"D. Number of animals upon which experiments, teaching, research, surgery, or tests were conducted involving accompanying pain or distress to the animals and for which appropriate anesthetic, analgesic, or tranquilizing drugs were used."* Chami & Felicity are in Dr. Nghiem's Muscular Dystrophy study categorized as D or E. AWA Violations 7 U.S.C. § 2143(a)(2)(B). (See Exhibit F)

52. Now that plaintiff JOYCE has been terminated, the status quo must be preserved in regard to the physical status of Chami and Felicity, in order to allow appropriate investigations by TAMU internal compliance officials and state and federal agencies, such as the USDA.

53. The USDA investigation is in the initial stages and will require discovery into facts requiring the granting of a TRO to preserve the status quo to allow for proper discovery by the USDA and the parties to potential litigation arising after the investigation. The timeline for the USDA investigation to play out in just the initial stages is at least several months, one year or more. Further, the result of the investigation could lead to litigation in the state or federal courts, based upon the outcome of the initial appeal and the effect on the parties.

54. A TRO is necessary to preserve the status quo of the circumstances implicating the investigation, and that includes discovery into the veracity of the statements made in the USDA filing, which necessarily implicates the study and the conditions at the animal testing lab.

55. Most importantly, the study relates to Chami and Felicity, and a TRO/Injunction is necessary to preserve THEIR status quo, as the study will cause negative health conditions upon them and kill them, and their status quo as of the time the filing was made and the statements contained within it cannot be preserved if they are intentionally or unintentionally killed or their health intentionally or unintentionally compromised.

56. Without enjoining the study/preventing it from proceeding, the full amount of discovery is not available to the parties with respect to the claims if litigation arises after the USDA investigation, or if the USDA determines it must take additional action.

## SECOND CAUSE OF ACTION
## FIRST AMENDMENT ACT VIOLATIONS

57. DEFENDANTS TAMU and ASHLEY as an employee/actor/agent of TAMU, acted intentionally and with specific intent to chill Plaintiff BFP's First Amendment right to Freedom of Speech.

58. On May 27, 2025, Plaintiff BFP posted a photo of Chami inside the laboratory at TAMU with a quote from ASHLEY on its social media channels regarding the campaign to Free Chami. (See Exhibit G) (all references to the beagle Chami refer to the dog who is identified by TAMU by her ear tattoo #UFQ-3).

59.     Felicity (ear tag #PHW-3) is the other dog in the study who is Chami's cage mate and also not intended originally to be terminal who we also want freed, and the violations directly affect both dogs. (all references to the beagle Felicity refer to the dog who is identified by TAMU by her ear tattoo #PHW-3).

60.     On May 28, 2025, BFP received a cease and desist email from ASHLEY, demanding the post be removed within 24 hours or legal action would be taken. (See Exhibit H)

61.     ASHLEY is an employee/agent/actor of TAMU, and as a state University and the A&M system, a state agency.

62.     The First Amendment to the United States Constitution protects Freedom of Speech. The government cannot regulate speech except in specific circumstances. This circumstance involves a strict scrutiny standard, and TAMU's conduct fails under the strict scrutiny test.

63.     BFP has evidence that TAMU has caused pain and suffering upon their dogs, and in an effort to inform the public, as is part of BFP's mission and right, it has taken to social media in order to gain attention to this matter. TAMU and ASHLEY'S suppression of this violates the First Amendment because it is viewpoint-based discrimination, and it is unreasonable, which is forbidden in all forums, both public and nonpublic and it is content-based discrimination, including speaker-based discrimination against BFP, and it is not narrowly tailored to a compelling government purpose, which is forbidden in designated public forums, and TAMU's Facebook Page is a designated public forum; and it impedes BFP's ability to petition the government for redress of grievances.

64.     The government and public interest in animal welfare is at its highest at the moment. With the Director of the NIH just going on record stating that the NIH is replacing animal testing with other reliable methods of testing because animal testing is not only unreliable but unethical and also stating that the government is pulling funding for beagle testing, TAMU, as a research University must be held to the highest of standards.

65. TAMU is no stranger to this exact issue, having gone through litigation, free speech and animal welfare issues regarding NGHIEM's dog muscular dystrophy testing, yet TAMU continues to turn a blind eye and continue to allow its agents to chill free speech.

66. ASHLEY attempted to restrict that speech with his email to BFP via its founder and president, Shannon Keith.

67. As an employee of defendant TAMU, he is a state actor.

68. TAMU is a state university which is a government entity which may be held to any of the above standards in attempting to restrict speech.

69. ASHLEY says the statement is false, but BFP has declarations from attendees of his meeting wherein he makes the statements he is stating are false.

70. Even if his claims of defamation/libel/slander were not a form of impingement upon BFP' free speech, TRUTH is a defense to claims of libel/defamation/slander, and in order for the parties to properly investigate the veracity of the statement, investigation into the conditions of the laboratory/facility, the two dogs (Chami and Felicity's) current health, and the conditions involved in the proposed study, a TRO is necessary.

71. A TRO is necessary to preserve the status quo of the circumstances implicating the speech, as the parties to this First Amendment case will need to conduct discovery, and that includes discovery into the veracity of the statement, which necessarily implicates the study and the conditions at the animal testing lab to which ASHLEY referred. Most importantly, the study relates to Chami and Felicity, and a TRO/Injunction is necessary to preserve THEIR status quo, as the study will cause negative health conditions upon them and kill them, and their status quo as of the time of the statement was made and the time the statement was posted cannot be preserved if they are intentionally or unintentionally killed or had their health intentionally or unintentionally compromised.

72. Without enjoining the study/preventing it from proceeding, the full amount of discovery is not available to the parties with respect to the claims – either in the First Amendment claim of BFP or any possible claim of libel/slander/defamation by ASHLEY, and thus the full availability of justice in the courts would be eschewed

### THIRD CAUSE OF ACTION
### EMPLOYMENT LAW VIOLATIONS

73. JOYCE began employment at TAMU on September 23, 2024, at TAMU's Comparative Medicine Program and Facility as an animal laboratory technician III and immediately noticed dogs in distress. One dog who particularly stood out, was a dog known by her ear tattoo number: #UFQ-3, who was later named Chami.

74. As stated in the facts above, JOYCE made numerous complaints and lodged concerns about the condition of Chami, tried to make Chami's condition better while she was there, asked to adopt Chami several times, and appealed to her superiors, her supervisors, the veterinarians and ultimately filed a complaint with the IACUC.

75. JOYCE was reprimanded for taking a video of Chami spinning and sending it to NGHIEM, even though this was the exact procedure she was to follow.

76. During the reprimand, she was placed on suspension on April 22, 2025, pending an investigation.

77. When JOYCE asked if she was being suspended because she took the video and showed it to NGHEIM, a veterinarian at TAMU, ASHLEY said "YES."

78. At the close of the investigation, she was terminated on May 2, 2025, which was then changed to May 14, 2025.

79. This shows retaliation, lack of concern over animal welfare and lack of transparency on the part of all defendants. It also undermines whistleblower protection under AWA (9 CFR § 2.31(c)(4); 7 U.S.C. § 2143(a)(2)(B).

80. JOYCE filed an appeal on May 14, 2025.

81. JOYCE has followed all legal processes prior to this TRO/Injunction.

82. JOYCE's employment claim is in the initial stages and will require discovery into facts requiring the granting of a TRO to preserve the status quo to allow for proper discovery.

83. The initial stages will last at the very least several months, if not a year or more. Furthermore, the result of either case is likely to proceed to litigation in the state or federal courts, based upon the outcome of the initial appeal and the effect on the parties.

84. A TRO is necessary to preserve the status quo of the circumstances implicating the speech, as the parties to this First Amendment case will need to conduct discovery, and that includes discovery into the veracity of the statement, which necessarily implicates the study and the conditions at the animal testing lab to which ASHLEY referred. Most importantly, the study relates to Chami and Felicity, and a TRO/Injunction is necessary to preserve THEIR status quo, as the study will cause negative health conditions upon them and kill them, and their status quo as of the time of the statement was made and the time the statement was posted cannot be preserved if they are intentionally or unintentionally killed or their health intentionally or unintentionally compromised.

85. Without enjoining the study/preventing it from proceeding, the full amount of discovery is not available to the parties with respect to the claims – either in the First Amendment claim of BFP or any possible claim of libel/slander/defamation by ASHLEY, and thus the full availability of justice in the courts would be eschewed.

# APPLICATION FOR TEMPORARY RESTRAINING ORDER

## INTRODUCTION

86.     The terminal study by NGHIEM is set to begin in early June (date unknown) and will result in a disruption of the status quo and irreparable harm which will unfairly prejudice Plaintiffs in the ways outline above, and more specifically, result in physical harm to the two dogs by further endangering their health such that they will not be able to be rehabilitated and could eventually be killed.

87.     Plaintiffs ask the Court to set this application for hearing on June 4, 2025, or as soon thereafter as the matter may be heard.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully request the Court grant the following relief following the Temporary Restraining Order hearing:

1.      Granting a Temporary Restraining Order prohibiting Defendants and any of its attorneys' agents, officers, employees, sponsors or contractors from killing Chami or Felicity and continuing their muscular dystrophy or any related study that involves Chami and Felicity, until further order of the Court;

2.      Grant TRO to preserve status quo of the circumstances involved in order to allow for appropriate discovery and the full availability of justice under the law to all parties involved in the above 3 cases, and if the dogs are killed/involved in the study then status quo not preserved, so grant order restraining TAMU from using the 2 dogs in a study/allowing the study to proceed and restraining TAMU from killing them;

3.      Preliminarily enjoin the study until sufficient discovery in each of the 3 enumerated cases above has been conducted;

4.	Permanently enjoin TAMU, its agents, contractors, system, attorneys, clients, sponsors, from discriminating against the speech of BFP;

5.	Place Chami and Felicity in a safe home vetted by BFP pending the trial on the merits.

The Plaintiffs respectfully request the Court grant the following relief following the trial on the merits:

1.	Granting a permanent injunction enjoining Defendant's agents and its employees, sponsors, contractors, agents, attorneys, affiliates and subsidiaries from continuing to harm Plaintiffs by continuing the study and killing Chami and Felicity;

2.	Releasing Chami & Felicity to Plaintiff BFP for permanent placement into homes;

3.	Under the Whistleblower Act, Relief per statute:
Sec. 554.003 Texas Govt. Code.:
(1) injunctive relief;
(2) actual damages;
(3) court costs; and
(4) reasonable attorney fees.

4.	Granting Plaintiffs such other and further relief as this Court finds necessary and proper.

RESPECTFULLY SUBMITTED,

 /s/ Eduardo Solis
Eduardo Solis
901 Wyoming Avenue
El Paso, Texas 79902
(915) 544-1818
(915) 544-4068 FAX
SBN: 00785012

Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2025, a true and correct copy of the foregoing document was transmitted via using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record, and further, and a true and correct copy of the foregoing document was sent by electronic mail to Ray Bonilla, West Texas A&M University's General Counsel.

/s/ Eduardo Solis
Eduardo Solis
901 Wyoming Avenue
El Paso, Texas 79902
(915) 544-1818
(915) 544-4068 FAX
SBN: 00785012

Attorney for Plaintiffs